# EXHIBIT B

**STATE OF MICHIGAN**

**IN THE CLARE COUNTY CIRCUIT COURT**

SHARON CURTIS
JANETTE CURTIS, individually
and as guardian and conservator for
Sharon Curtis
        **PLAINTIFFS**

                                    **Case No: 20-900095-CH**

**V**                                     **Hon:   Thomas R. Evans**

DEUTSCHE BANK NATIONAL TRUST COMPANY,
As Trustee for Quest Trust 2005-X1,
Asset Backed Certificates Series 2005-X1,
OCWEN LOAN SERVICING, LLC
A Foreign Limited Liability Corp.
PHH MORTGAGE SERVICES, LLC
A foreign Profit Corp.
NEW REZ, LLC
A Foreign Limited Liability Corp.
Trott Law, PC
              **Jointly and severally**
              **DEFENDANTS**

_____/

| | |
|---|---|
| **VALERIE A. MORAN (P 56498)** | **DAVID M. DELL (P 61778)** |
| **THE MORAN LAW FIRM, PLLC** | **THOMAS M. SCHEHR (P 54391)** |
| **Attorney for Plaintiffs** | **DYKEMA GOSSETT, PLLC** |
| **28111 Couzens Ave** | **Attorney for Defendants** |
| **Madison Heights, MI  48071** | **39577 Woodward Ave Ste 300** |
| **\*\*NOTE NEW ADDRESS\*** | **Bloomfield Hills, MI  48304** |
| **Covid Contact: C: 248-514-6755 and** | **248-203-0722** |
| **Via email: vmoranatty@gmail.com** | |
| **Due to mail delivery issues** | |

_____/


**FIRST AMENDED COMPLAINT AND REQUEST THAT PREVIOUSLY GRANTED PRELIMINARY INJUNCTIVE RELIEF CONTINUE**


NOW COME the Plaintiffs, SHARON CURTIS and JANETTE CURTIS (co-plaintiff and

1

guardian and conservator of Sharon Curtis by and through their attorney, VALERIE A. MORAN

of THE MORAN LAW FIRM, for their First Amended Complaint against Defendants as

allowed per the order entered by this Honorable Court on August 10, 2021 state as follows:

<u>**Summary**</u>

1. This matter arises out of an <u>illegal foreclosure</u> of the family home of a disabled senior

   citizen, Plaintiff, SHARON CURTIS, and the childhood home where her

   daughter Plaintiff JANETTE CURTIS (guardian and conservator to Sharon Curtis) was

   raised.  The evidence herein will show that Plaintiffs <u>timely made the payments,</u>

   <u>including via Western Union, which Defendants repeatedly failed to properly credit</u>

   <u>and/or apply to the loan as required. loan.  Instead, Defendants engaged in a pattern and</u>

   <u>practice of lost payments, returned payments, payments placed in suspensory accounts, or</u>

   <u>other accounts or not accounted for at all, false statements, and  negligent servicing that</u>

   <u>this home went to Forelosure in violation of both Michigan and Federal law.</u>

2. The Defendants, via their foreclosure  agents and/or legal counsel, Trott Law, PC,  who

   conducted the foreclosure, were put on written notice of their servicing errors and overall

   lack of compliance with applicable laws.  Receipt has been acknowledged by Trott on

   behalf of their client as required in paragraph 20 of the mortgage and per Trott Law

   attorney, Milrela Albu, Defendants agreed to start the recission process of the Sheriff

   Sale, which included a review of the loan. However, without notice to the Plaintiff, that

   process was stopped and the property was listed for sale, leaving Plaintiff with no

   alternative but to pursue this case**.  (Exhibit 1: Emails to and From Trott Law**

   **Attorneys )**

3. Defendants, foreclosure agents and/or legal counsel, Trott Law( who conducted the

2

foreclosure and provided reinstatement figures as directed by the Defendants) were on prior notice of the error and acknowleged the error, yet have failed to cooperate or mitigate damages by agreeing not to transfer the property, thus, Plaintiffs incurred additional legal fees via motions and additional correspondence; which could have been avoided by a due diligence investigation and research.

4. Plaintiffs, at the time of , and a second time after Defendants attempted to secretly transfer the property, sought a Temporary Restraining Order, which as was made clear by Defendants conduct, is needed to prevent the irreparable harm that would occur if the property was further transferred and/or the title was further encumbered or clouded.  This Honorable Court ruled that such protections were necessary an entered an order, Plaintiffs ask that said order continue.

5.  Additional actions of the Defendans are the ongoing "inspections" in which individuals, upon information and belief, that are agents and/or employees of the Defendants entering onto Plaintiffs property without notice, looking in windows and scaring the Plaintiffs; said acts are in violation of law.

6.  The acts in the prior paragraph are harassing and in violation of the contract between the parties.


## JURISDICTION AND VENUE


7. Plaintiff, **SHARON CURTIS** is a resident of the City of Harrison, County of Clare, State of Michigan and has resided in the home for more than 26 years,  described to wit:

3

**Lot 4 Block 27, of Wilson's Second Addition to the city of Harrison,
as set forth in Plats, Clare County records, State of Michigan**

commonly referred to as: **166 E. Pine St. Harrison, MI  48625**

**(Exhibit 2: Warranty Deed) (Exhibit 3 : Original Land Contract dated 3/12/1997).**

8.   Plaintiff**, JANETTE CURTIS** is a former resident of the City of Harrison, County of

Clare, State of Michigan and was in Harrison when many of the actions complained of herein

took place and has invested in this property supplying funds to her mother to safeguard her

inheritance and childhood family home.

9. The aforementioned real property is located in the County of Clare, State of Michigan and

therefore jurisdiction is proper in this Honorable Court.

10.Defendant **Deutsche Bank National Trust Company, As Trustee for Quest Trust**

**2005-X1, Asset Backed Certificates Series 2005-X1,[1]  (Hereinafter sometimes referred**

**to as "Deutsche"** is the owner of the mortgage and note, having acquired them via

assignment (said assignment related document(s) upon information and belief are in the

possession of the Defendants) upon information and belief with their corporate office in

California and conducting business in the County of Clare, State of Michigan.

11. Defendant **OCWEN LOAN SERVICING, LLC,** upon information and belief is a

foreign profit limited liability corporation  and is a mortgage loan servicer at

relevant times pertaining to this  matter, conducting business in the County of

Clare, State of Michigan and despite a merger with PCC, has continued to send

---

[1] Deutsche Bank and its affliciates is a has been fined more than 60 million dollars to the Federal Government and 3.5 million to the State of New York for alleged wrong doing. Source: Corp-Research.org and 7.2 Billion for misleading investors in residential mortgage backed securities. Source: Department of Justice 2017 Press Release.

4

correspondence and/or conduct business under the name " Ocwen Loan Servicing in 2020. .

12. Defendant, **PHH Mortgage Services Corporation (Hereinafter PHH)** upon information and belief is in the business of mortgage loan servicer and is: a foreign profit corporation conducting business in the County of Clare, State of Michigan, and, upon information and belief has recently completed a merger with Defendant Ocwen.

13. Defendant **NewRez, LLC, (hereinafter "NewRez"** upon information and belief is a mortgage loan servicer and is a foreign limited liability company conducting business in the County of Clare, State of State of Michigan.

### <u>STATEMENT OF FACTS</u>

14. As set forth above, Plaintiff, Sharon Curtis is the legal and proper owner as set forth above.

15. After paying off the home, Mrs Sharon. Curtis and her then husband, Neal Curtis, obtained a mortgage and note to remodel the home; much of which was to accommodate her disability as Mrs. Curtis is in a wheelchair, (the loan in question) ( **Exhibit 4: Quitclaim deed adding Neal Curtis to the home) (Exhibit 5: Mortgage recorded 09/02/04 L925 Page 407 and Note).** This was later amended with a Temporary Repayment Agreement **(Exhibit 10: Temporary Repayment Agreement).**

16. The Temporary Repayment Agreement called for a permanent agreement to be sent, but the Defendants never sent it **(Exhibit 10), instead the property was foreclosed upon (Exhibit 12: Sheriff Deed).**

17. Mrs. Curtis later divorced and pursuant to the Divorce Decree, Mr. Curtis was removed from ownership of the **home (Exhibit 6: Recorded Quitclaim Deed granting Neal Curtis interest to Sharon Curtis).**

18. Multiple questionable assignments are in the chain of title **(Exhibit 7: Assignment to Deutsche Bank National Trust Company as Trustee for, Amerquiest (See document for entire title) and ( 8: Assignment of Mortgage "signed" by Crystal Moore and "notarized" by Bryan J. Bly).**[2]

19.  Multiple court actions have taken place and multiple articles and news reports have been published naming Crystal Moore and Bryan Bly as witnesseses due to their alleged illegal, Robo signing.[3] **(Exhibit 9: Article by Mark Puente**, one of many found online and this attorney continues to investigate this matter**) .**

A second Assignment purports to transfer the mortgage to: Deutsche Bank National Trust Company, As Trustee for Quest Trust 2005-X1, Asset Backed Certificates Series 2005-X1 **(Exhibit 11:  Assignment to: Deutsche Bank National Trust Company, As Trustee for Quest Trust 2005-X1, Asset Backed Certificates Series 2005-X1).** The address on the Assignment listed is C/O: Ocwen Servicing LLC Worthington Rd Sste100 West Palm Beach, FL  33409 but does not match other public record addresses including the address listed on the Sheriff Deed **(Exhibit 12: Sheriff Deed ).**

20. The servicing on this loan was transferred a multitude of times from Defendant **OCWEN** (as per the second assignment) to Defendant **PHH** as per later correspondence set forth

---

[2] Crystal Moore and Bryan Bly are two well known alleged robo signors.  An internet search brought forth extensive allegations, depositions, youtube videos etc… of their alleged illegal antics.  Plaintiff counsel is still investigating and will further supplement.

[3] "Robo signing" an action in which a single person supposedly reviewed, analyzed processed and ultimately signed by  ahnd as many as 10,000 foreclosure documents per month. This practice of rapid fire signing of documents without adequately verifying the trust of the document, often in violation of statutory requirements.

herein to Defendant **NewRez** whose participation was never fully explained by Defendants other than the few pieces of correspondence sent to the Plaintiff.

21.  The loan in question was owned by the Trustee: Deutsche Bank National Trust Company as Trustee for Quest Trust 2005- X1, Asset Backed Certificattes Series 2005-X1.

22. Servicing errors and other problems such as contradictory information and instructions have gone on for years, but became acute concurrent to the change in servicing and  misapplication of monthly payments.

23. Said foreclosure is illegal as Plaintiff, SHARON CURTIS and her daughter, Plaintiff Janette Curtis made the payments both prior to being accused of being behind and later, as required pursuant to the "Temporary Loan Agreement" **(Exhibit 10: Temporary Loan Agreement and (Exhibit 11): Plaintiff Affidavit attachment G)  However, Defendants violated their own agreement by failing to finalize it and providing contradictory information and instructions to Plaintiffs, upon information and belief, pursuant to the final agreement that they failed to process.**

24. Due to the alleged missing payments and the medical conditions of, Plaintif SHARON CURTIS, Plaintiff's daughter: Plaintiff JANETTE CURTIS, has had tobecome involved and thus lose time from work, and has also began providing funds for payments and corresponded extensively with all Defendant entitie**s (Exhibit 14 (prior exhibit 11): Affidavit of JANETTE CURTIS with Exhibits A - Q).**

25. Said affidavit of Plaintiff, Ms. Janette Curtis, supported by exibits, clearly sets forth the chronological events, false statements, contradictory information and errors on the part of the Defendants that led to the illegal foreclosure.

26. The Defendants, as clearly set forth in the Affidavit, were repeatedly put on notice of their servicing errors that included the failure to apply payments and incorrect claims of a default.

27. Said errors included returning Plaintiff's payments in error <u>repeatedly, sending out checks in the incorrect names repeatedly</u> (**Exhibit 13**)

28. <u>Said errors also included advising both Plaintiff Sharon Curtis and her daughter, Plaintiff Janette Curtis in writing NOT to pay the April 2019 payment and then PENALIZING THEM when the followed instructions and they did not make a payment in April 2019</u> (**Exhibit 11 Exhibit H: Payment reminder Notice with "late charge" for the payments RETURNED BY THE SERVICER 3 TIMES**).

29. <u>Defendants also failed to provide an accurate reinstatement figure despite both a contractual</u> (**Exhibit 6 Mortgage paragraph 19**) <u>and statutory obligation to do so under both State and Federal Statutes to do so.</u>

30.  Defendants repeatedly promised both Plaintiffs that they would fix the errors and apply the payments, but failed to do so **repeatedly.**

31 Despite being repeatedly put on notice of the multitude of serious servicing errors and despite repeatedly promising to fix the errors and adjourn the Sheriff Sale, **the Sale took place on December 4, 2019 (Exhibit 12: Sheriff Deed).**

32. Defendants have blatantly violated both State and Federal Law; specifically:

> A.  MCL 600.3212(c), by failing to publish the correct amount owed on the mortgage (as evidenced by their "accounting" practices concerning payments).

> B. MCL 600.3204 as the power of sale had <u>not</u> become operative as there was NOT a true default.  In fact, the only "default" was in fact manufactured by the

Defendants by not applying payments in violation of paragraph two of the mortgage (**Exhibit 5: mortgage page 4 paragraph 2**) and their own "Temporary Repayment Agreement " (**Exhibit 13: Temporary Loan Agreement and (Exhibit 11 attachment G**) and thus Defendants violated the law and were the initially breaching party of the Temporary Loan Agreement (**Exhibit 13**) when they failed to finalize it and provide final terms as per the contract (**Exhibit 13 Temporary Repayment Agreement**)

The evidence is clear that the foreclosure sale is in violation of multiple State of Michigan and Federal Statutes and further that Defendants have failed to voluntarily set aside said illegal sale despite being on notice of their errors and misrepresentations to the Plaintiffs. (**See Emails to and f rom Trott Legal Counsel**)

**33. Plaintiffs were not in default had the Defendants properly serviced the loan, and further Plaintiffs were ready, willing and able to reinstate the mortgage loan and would have done so if Defendants had met their contractual and statutory duties of providing an accurate reinstatement figure prior to the sale; Plaintiffs remain ready willing and able to reinstate the mortgage today upon receipt of a full accounting of all payments made to date on the mortgage. TO DATE, DEFENDANTS HAVE FAILED TO PROVIDE A FULL ACCOUNTING IN VIOLATION OF FEDERAL RESPA LAWS AND STATE LAW: MCL 445.1674, Further, Defendants published incorrect amounts due in the newspaper in violataion of MCL 600.3212 and falsely alleged that there was a default, when in fact, they were in possession of the funds needed to reinstate the loan.,**

34.     Defendants made repeated false and deceptive statements and caused false written

correspondence to be sent to the Plaintiffs providing a reinstatement figures that

contradicted other documents and Defendants refused to respond and provide an accurate

figure or explain which figure was correct and which documents should be disregarded due

to error**.   As a direct result of Defendants improper acts,  gross irregularities and**

**fraud in the foreclosure proceedings Plaintiffs were materially (Exhibit 11: Affidavit**

**of Plaintiff Janette Curtis).**

## COUNT I: DEMAND FOR AN ACCOUNTING

35. Plaintiffs incorporate each and every one of the preceding allegations by

reference.

36. Plaintiffs hereby demand a full and complete accounting of the mortgage loan

from the date that any of the Defendants had any servicing interest up to the

present.

37.  Defendants, pursuant to both State and Federal law, are required to maintain

such records, yet, inexplicably have repeatedly failed and refused to comply with

statute and timely provide a full and complete accounting.

38.  On August 11, 2020 Defendant counsel provided a late and incomplete

response that is in violation of both state and federal statutes in that pursuant

to RESPA (RealEstate Settlement Procedure Act) in 12 USC 2605(e)  requires that  a

servicer timely respond to a borrower by acknowledging the request in 5 business days

10

(12 USC 2605 ( e)(1)(A) and then comply with the request "*Not later than 30 days (excluding legal holidays, Saturdays and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1)*"  (12 USC 2605 (2) and state law requires pursuant to MCL 445.1674 the very straightforward requirement that :" *within 25 days after receipt of a written request from the borrower a mortgage servicer shall deliver to the borrower a ledger history of the borrower's account, but in no event for a period in excess of the immediately preceding 12-month period and the total unpaid balance*."

(RESPA is  litigated in Federal Court, and a Rule 15 motion is now being filed) the count was in the original Complaint and is provided herein as the failure is material to demonstrate the irregularities in the mortgage foreclosure and that, upon information and belief, Defendant is aware of the irregularities which is why they have not provided a full and complete accounting (ie: they cannot due to the errors).

39. Michigan law, MCL 445.1674 also requires that an annual statement and ledger history of a borrowers loan be provided.

40.  Defendants have failed to comply with MCL 445.1674.

41.     In the instant case, Defendants acknowledged Sharon Curtis's original request on February 10, 2020, was acknowledged by New Rez, but then the Defendants failed to comply and provide the ledger history as required by MCL 445.1674.

42.  Again, Defendants failed to comply as required and failed to provide a full and complete ledger history or "accounting" of the loan as required and within the timeframe required. Months late, Defendant counsel provided the attached document that is incomplete, untimely, has missing payment  entries, missing disbursements and does not reconcile with the payments

11

made or the amount published for the foreclosure sale as the amount due per the requirement of MCL 600.3212.

43.  Upon information and belief, due to these missing entries, reversed payments by the defendants, and other irregularities and/or fraudulent acts, the alleged "default" which is a required condition precedent to make the power of sale active for a valid foreclosure pursuant to MCL 600.3204 was flawed, irregular and thus improper making the Sheriff Sale voidable pursuant to the standards set forth in Michigan Supreme Court Case Kim v Chase.

44.  Additionally, the statutory requirement pursuant to MCL 600.3212 that the amount due and owing be published is also upon information and belief, incorrect as despite multiple requests for more than 6 months, Defendants cannot produce a single accounting ledger that supports the figures published and relied upon for the Sheriff Sale ( under the mortgage was not in fact The determination of what is due, must include actual disbursements from Defendants and all calculations.

45.  Plaintiff is entitled to this ledger in it full and complete format with all payments and all disbursements included and reconciled.

46.  Plaintiff will supplement with a demand for monetary relief, upon receipt of this information.

47.  Plaintiff seeks an order from this Honorable Court compelling Defendants to provide a full and complete accounting in the timeframe ordered by this court. Whereby Plaintiff seeks a further order that the accounting be reviewed by a Court

ordered certified fraud examiner to determine if the payments were in fact properly

applied

48.  Upon information and belief, Defendants repeatedly breached their duties by:

   **a**. failing to provide accurate and timely statements

   **b**. failure to provide accurate and timely reinstatement figures

   **c**. failed to provide a full and complete accounting in violation of RESPA

   and the mortgage brokers lenders and servicers licensing act, MC: 445.1651

   ete seq, specifically, 445.1674.

   **d**. failing to make the required efforts for early intervention and <u>in fact went</u>

   <u>to far as to make misrepresentations to the Plaintiffs and reverse and</u>

   <u>return their payments when she contacted them about the status of</u>

   <u>the mortgage loan by falsely assuring the Plaintiffs that the Sheriff</u>

   <u>Sale would not proceed and the errors would be corrected.</u>

   <u>**e**. failing to apply payments already in their possession</u>

## <u>COUNT II: QUIET TITLE AS TO ALL DEFENDANTS</u>

49. Plaintiffs incorporate each and every preceding allegation by reference.

50. Defendants actions were in violation of MCL 600.3204 and MCL 600.3212

   And were done intentionally and/or negligently but with the intent to

dispossess Plaintiffs  of their family home.

51.  That Defendants knew or should have known that their actions were

contrary to law and contraries to their duties to the Plaintiffs.

52. That as a result of the Defendants illegal and intentional acts, property

has wrongfully gone to Sheriff sale and is in danger of title improperly

vesting in the title of Defendant Deutsche.

53.  That voiding the deed is appropriate due to fraud and irregularities in:

a. the servicing of the loan

b. the illegal foreclosure done in clear violation of both State and

Federal Statutes as set forth herein

c. the suspect assignments, that appear to be signed by known robo

signors.

54.   Michigan Supreme Court case: *Kim v JP Morgan Chase Bank,* NA 825

N.W. 2d 329 (Mich 2012) has clearly held that voiding of a foreclosure and

Sheriff Deed is appropriate in instances of fraud and irregularity.

55.   The voiding of the Sheriff deed is an appropriate remedy in the instant case

as the evidence set forth herein, supported by Affidavit and documentary

evidence makes it clear that but for the Defendants errors and failure to comply with statutory and contractual duties in failing to timely and properly finalize contracts, apply mortgage payments and provide the reinstatement figure, the Sheriff sale would not have occurred (**See Affidavit of Janette Curtis Ex. 11 and Sheriff Deed Ex. 12).**

56.   Plaintiff was wronged and thus materially disadvantaged at multiple stages of this process: in the failure to apply payments, the failure to provide an accounting and the failure to provide an accurate reinstatement figure.

57. Plaintiff remains ready willing and able to reinstate the mortgage upon receipt of a full accounting of past payments and disbursements and an accurate reinstatement figure and but for the Defendants wrongful and illegal acts, that included manufacturing a default, Plaintiffs would not have been in foreclosure.

## COUNT – III- COMMON LAW and STATUTORY SLANDER OF TITLE AS TO ALL DEFENDANTS

58.  Plaintiff incorporates each and every proceeding allegation by reference.

59.  Elements for common law slander of title are: falsity (publication of a false statement), and malice (intent to injure the plaintiff) *Glieberman v*

15

*Fine,* 248 Mich 8 226 NW 669 (1929), statutory slander of title is MCL 565.108.

60. Special damages are allowed and recognized by this statute and may include attorney fees, litigation costs, impairment of vendability, landlord tenant disputes, emotional damages.[4]

61. Defendants, or agents acting on their behalf and/or under their direction, committed common law Slander of Title by knowingly and intentionally publishing false statements and affidavits concerning Plaintiff's property by drafting and sending fraudulent and/or misleading documents, and later by recording or causing the recording of said deed documents with the Clare County Register of Deeds and other and by causing the initiation of the foreclosure of Plaintiff's home.

62 . Said acts in the foregoing paragraph were done with malice and with the intent to injure the Plaintiff as was advising Plaintiff counsel in writing that the Sheriff sale was in the process of being rescinded and then, iwwthout notive, proceeding to list the property for sale in an attempt to illegally divest them of their property and home of more

---

[4] See Exhibit 1: Plaintiff attorney contacted Trott law and specifically asked that they agree not to further transfer the property while this matter was being investigated.  Trott refused, thus necessitating this action to protect Plaintiff's interests.  Additionally, in a prior case, less than 6 months ago, Trott verbally agreed to set aside a Sheriff sale, yet unbeknownst to this attorney the property was in actuality being readied for sale by another law firm and was already "boarded for sale" in the client's system. Wayne County Case No: 19-013232-CH.

than 26 years.

63. As a direct result of Defendants illegal actions, Plaintiffs and their family

have been damaged as set forth herein, including but not limited to

immense emotional distress, the loss of their property and legal and

litigation costs associated with this action.

## COUNT – IV- BREACH OF CONTRACT AS TO ALL DEFENDANTS

64. Plaintiffs incorporate each and every proceeding allegation by   reference.

65.  That Defendants had a duty to comply with the notice and reinstatement     figure provisions

in the mortgage.

66. Plaintiffs relied upon the representations of Defendants to their

detriment.

67.  That Defendants breached their duties under the contract as set

forth herein.

68.  As a result of Defendants actions, Plaintiffs were damaged.

## COUNT – V-  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.    Plaintiff hereby incorporate each and every prior paragraph as though full set forth

herein.

70.    Defendants were specifically put on notice that their actions were causing Plaintiff

SHARON  CURTIS distress as as a result, she was suffering medical conditions resulting

17

in hospitalization.

71.    Defendants intentionally disregarded this information and continued to utilize false

improper criteria to frustrate and prevent the proper application of Plaintiffs mortgage

payments.

72.    Defendants conduct was extreme, outrageous and beyond all possible bounds of decency.

73.    Defendants knew or should have known the effect their acts would have on Plaintiff,

SHARON CURTIS, a disabled, wheelchair bound, senior citizen.

74.    As a result of Defendants actions, Plaintiff SHARON CURTIS has suffered severe

emotional distress, humiliation,  and other medical and psychological conditions needing

medical treatment and resulting in hospitalization and therefore has been damaged.

## COUNT –VI- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75.    Plaintiffs hereby incorporate each and every prior paragraph as though fully set forth

herein.

76.    Defendants repeatedly and negligently disregarded both Plaintiffs statements advising

these Defendants of the stress that the loss of the home was causing to Plaintiff SHARON

CURTIS and continued to utilize false information in publications and failed repeatedly

to respond to her requests for an accounting and clear explanation as to where her

payments were going.

77.    Defendants, repeatedly, negligently and in violation of both State and Federal Law,

repeatedly failed to provide the Plaintiffs with an accurate reinstatement figure.

78.    The Defendants actions frustrated Plaintiffs ability to keep the family home.

79.    Defendants conduct was extreme, reckless, outrageous and beyond all possible bounds of

decency.

## COUNT -VII: FRAUDULENT MISREPRESENTATION

80. Plaintiff incorporates by reference  each and every prior paragraph.

81. Defendants and Defendants agents, upon information and belief, at the direction of the

Defendants, intentionally made false representations of material facts to Plaintiff

regarding the status of the loan, the nature of contractual agreements, the application of

payments and the requirements for compliance.

82.  Defendant's representations were false when they were made.

83,  Defendant knew that its representations were false when they were made, or Defendant

made them recklessly, without knowing whether they were true and then actively attempted

thwart Plaintiff's ability to regain her home by secretly listing it for sale after promising in

writing to begin the recission process.

84.  Defendant intended that Plaintiffs would rely on their representations and the representations

made via their agents.

85.  Plaintiffs relied on Defendant's false representations when sending in payments, sending in

documents and entering into agreements.

86.  As a result of Defendant's fraudulent misrepresentations, Plaintiffs has suffered substantial

economic losses.

## COUNT -VIII: INNOCENT MISREPRESENTATION

87.  Plaintiff incorporates all prior paragraphs by reference.

88.  Defendant's representations, as set forth in the preceding paragraphs, were made in

connection with the making of contracts between Plaintiff Sharon Curtis and Defendant.

89. Plaintiffs would not have entered into the contracts if the Defendants had not made the

19

representations.

90.  Plaintiff suffered substantial economic losses as a result of Defendants conduct set forth

herein and their losses have benefitted the Defendant.

## COUNT IX: EXEMPLARY DAMAGES

91.  Plaintiff incorporates by reference all prior paragraphs.

92.  Defendant's representations were made intentionally and maliciously and have caused P

laintiff to suffer humiliation, outrage, and indignation and exasurbation of medical

conditions.

PLAINTIFF REQUESTS that this court enter a judgment in **Plaintiffs** favor and against

Defendant and award the following damages:

1. compensatory damages in an amount that is in excess of $25,000 and that is sufficient to
   compensate Plaintiff for their actual, consequential, and incidental losses sustained as a
   result of Defendant's wrongful actions
2. exemplary damages in an amount in excess of $25,000 resulting from Defendant's
   intentional and malicious actions
3. interest, costs, and reasonable attorney fees

WHEREFORE, plaintiffs pray for the entry of judgment:

A.     Granting Plaintiff  SHARON CURTIS all legal title to the subject property

described above

B.     Awarding Plaintiffs all damages incurred by Plaintiffs as a result of

Defendants actions including an award for all of Plaintiff costs, special

and/or statutory damages and attorney fees and costs herein.

C.     Awarding Plaintiffs all economic and consequential damages as well as

Damages for emotional distress

D.    Declaring the Sheriff Deed void due to the failure to comply with

contractual and statutory requirements in both state and federal law and due

to Defendants false, misleading and improper acts in violation of the

mortgage contract, MCL 600.3204 and Federal RESPA statutes.

E.    A temporary restraning order preventing the further transfer of the property

or further actions regarding the property including property preservation or

eviction of the Plaintiffs or any type of interference with Plaintiff's rightful

possessory interests.

F.    Awarding any other relief that this court deems just and equitable, with cost

and fees awarded to Plaintiff so wrongfully incurred.


Respectfully submitted,

By:    __/s/ Valerie A, Moran_____
VALERIE A. MORAN (P 56498)
THE MORAN LAW FIRM,
Attorney for Plaintiffs
28111 Couzens
Madison Hts, MI  48071
Ph: 2 248-514-6755
Email: vmoranatty@outlook.com

Date: August 24. 2021